UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                                                    CASE NO.

**LOUISIANA UNDERTAKING CO., INC.**                                  **13-11257**
                                                                                          SECTION A
DEBTOR                                                                             CHAPTER 11

## REASONS FOR DECISION

This matter is before the Court pursuant to a Motion for Allowance of Secured Claim, Including Allowance of Creditor's Attorney's Fees (P-160)("Motion"), filed on behalf of Community Associates, Inc. ("CAI"). The hearing on the Motion was held on June 13, 2014. At the conclusion of the hearing, the Court took the matter under advisement.

**I. Facts**

Louisiana Undertaking Company, Inc. ("Louisiana Undertaking" or "Debtor") filed a voluntary petition for relief under Title 11, Chapter 11 of the United States Bankruptcy Code. No trustee was appointed and the Debtor remained in possession of its assets. At filing, Debtor owned a funeral home located at 1449 N. Claiborne Avenue, New Orleans, Louisiana ("Claiborne Avenue"). After marketing the property postpetition, Claiborne Avenue was sold on June 3, 2014.

CAI is the holder of two promissory notes secured by mortgages on Claiborne Avenue. The first promissory note, in the original principal amount of $401,964.00, is dated May 26, 2005, and bears interest at the rate of 21.00% per annum repayable in 120 monthly installments of $3,349.70 each ("Note 1"). The second promissory note, in the original principal amount of $38,953.20, is dated May 15, 2008, bearing interest at 23.83% per annum, payable in sixty monthly installments of $649.22 each ("Note 2").[1]

---

[1] Exhs. 1A and 3.

Debtor made all payments on CAI's notes from its checking account.  The last payment received satisfied the September 2010 installment on Note 1 and the October 2010 installment on Note 2.  CAI instituted foreclosure proceedings in February 2013 and Debtor filed for bankruptcy relief on May 8, 2013.  CAI's proof of claim alleges $202,525.99 was owed on Note 1 and $21,239.26 on Note 2 as of the Petition Date.

In November 2013, CAI indicated its payoff on Note 1 was $199,985.31.[2]  Over the following four months, Debtor paid $15,992.00 in adequate protection payments. Following the sale of CAI's collateral in June of 2014, CAI produced a payoff on Note 1 of $217,189.34, plus attorney's fees, insurance costs, and late fees.[3]

In addition to Notes 1 and 2, CAI is also the holder of a third promissory note, in the original amount of $349,920.00, dated April 18, 2007, and repayable in 180 monthly installments of $1,944.00 each, ("Note 3").[4]  Note 3 was made by Debtor's owners, Mr. and Ms. Francois and is secured by a mortgage on Mr. and Ms. Francois' residence.  Debtor is not obligated on Note 3.

The parties do not dispute the amounts tendered to CAI prepetition or the dates of payment. However, they do dispute the application of the payments and the calculation of the amounts due. Specifically, Mr. and Ms. Francois and Debtor contend that certain payments made by them to CAI were intended as payments on Notes 1 or 2 but were incorrectly credited toward Note 3.  In addition, Debtors claim that the balance due on Notes 1 and 2 was incorrectly calculated under the Rule of 78s method.

---

[2] Exh. 8.

[3] Exh. 10.

[4] Exh. 1.

**II. Analysis**

    **A. Application of Payments**

At the hearing on its Motion, CAI offered into evidence a ledger of all payments made and applied to the three Notes. In addition, Ms. Pollinger, CAI's Executive Vice-President, testified as to the relationship between CAI, Debtor and Mr. and Ms. Francois. Ms. Pollinger represented that Mr. and Ms. Francois were long standing customers of CAI and paid their loans "like clockwork" for many years. Generally, Debtor and Mr. and Ms. Francois paid the three Notes monthly from Debtor's checking account, rounding the installment amounts. The installments on Notes 1 and 2 were paid in amounts of $4000.00 and Note 3 was paid in rounded installments of $2000.00. Occasionally a payment might be missed, but it was made up by a double or catch up payment.[5]

All payments on the three notes were made from Debtor's checking account. This includes Mr. and Ms. Francois' personal mortgage payment. The Court does not opine as to the propriety of this practice. Debtor avers that all payments by it should have been applied to its notes as that was its intent. CAI alleges that Debtor and Mr. And Ms. Francois directed it to apply certain payments to Mr. and Ms. Francois' debt on the residence. CAI accepted payments from Debtor's account for Note 3 because 1) it believed that the proceeds of Note 3 had been used in Debtor's business and 2) CAI knew that Mr. and Ms. Francois were the sole owners of Debtor.

Ms. Pollinger testified that default on Note 1 occurred in October 2010 and Note 2 one month later. CAI's ledger corroborates this testimony.

---

[5] Exh. 1. Some of the payments vary in amount to compensate for earlier missed payments.

Ms. Francois testified that she received regular statements on the loan and Debtor's checking account prepetition. Although she claimed that every payment from Debtor's account should have been applied to Notes 1 & 2, she admitted that she never paid Note 3, or any other note, with her personal funds. She had no explanation as to how Note 3 was maintained over the seven (7) years preceding Debtor's case. Ms. Francois also admitted that she never complained to CAI about the application of payments.

The Court finds the testimony of Ms. Pollinger to be credible. Both the timing and amount of payments indicate that Debtor intended CAI to apply its payments to each of the notes. On the other hand, Ms. Francois' testimony was not credible because she testified that every payment from the Debtor should have been applied to the business loan while admitting if done so, she would have never paid her home mortgage.

**B. Calculation of Amounts Due**

Notes 1 and 2 were executed under a "Rule of 78s" calculation. Both Notes provide, in pertinent part:

> This promissory note has been executed in connection with a precomputed credit transaction; the principal of this note includes a loan finance charge with an average annual percentage rate as shown above, calculated on the assumption that all scheduled payments will be made when due.
>
>                 *                *                *
>
> The makers hereof may repay in full, the unpaid balance due hereon, at any time, before the contractual maturity date, and upon prepayment before the contractual maturity date, shall be entitled to a rebate of the unearned loan finance charges, which shall be computed by use of the rebate method commonly referred to as the "Rule of 78" or the "Sum of the Digits" rebate method, and that no rebate of less than $1.00 will be made.[6]

---

[6] Exhs. 1A and 3.

4

At trial Debtor offered testimony regarding the appropriate methodology for calculation of its indebtedness to CAI. Debtor argues that the loans should be calculated as simple interest loans from inception to derive the proper payoff amount. Using this methodology produced a principal and interest payoff of $252,286.00 on Note 1 and $19,255.99 on Note 2. CAI alleged the payoff should be $217,189.34 in principal and interest on Note 1 and $25,792.29 on Note 2. CAI calculated its debt by converting its loans to simple interest after Debtor filed for bankruptcy relief. It allegedly calculated the rebated interest through May 8, 2013 and then added simple interest at the Note rates postpetition, applying postpetition payments to principal and interest. The Court finds that neither method properly calculates the balance owed.

Both parties agree that Debtor made total prepetition payments on Notes 1 and 2 of $229,459.94. Assuming installment payments of $3349.70 and $649.22 on Notes 1 and 2 respectively, prepetition, Debtor made 63 full installment payments on Note 1 and 27 on Note 2.[7] At the beginning of month 64, Debtor's principal balance on Note 1 was $137,118.42 without unearned interest. At the start of month 28, Debtor's principal balance on Note 2 was $16,401.90 without unearned interest.

CAI admits that it did not convert this loan to simple interest prepetition. As a result, the loans earned interest between October 2010 and May 2013 or for an additional 32 months under the Rule of 78s. In month 95, Note 1 would have had an interest rebate due of $10,580.58. In month 59, Note 2 was due an interest rebate of $8.92.

Using these calculations and after applying the rebate due in May 2014, the payoff in

---

[7] Late charges of $120 and $105 were assessed and paid prepetition from this total leaving $229,234.94 to apply to the notes. After making the installments indicated, a residual balance of $40.78 has been applied to prepetition accrued interest on Note 2.

principal and interest of Note 1 was $180,352.32 and Note 2 had a balance of $21,415.34. CAI calculated the debt due at $181,186.17 and $20,813.20. While the difference is slight, CAI then calculated simple interest postpetition on the *entire* balance rather than just principal. Only the principal portion can bear interest under Louisiana law. As a result, only $137,118.42 on Note 1 and $16,401.90 on Note 2 can bear interest.

In addition, postpetition adequate protection payments made by Debtor in the amount of $15,992 must be applied to principal as CAI's collateral did not lose value during the case's administration. Applying $13,398.80 to Note 1 and $2593.20 to Note 2 further changes CAI's calculations.

Debtor's calculations are also incorrect. Debtor's request to reamortize both Notes under a simple interest method from inception is improper.

Under the "Rule of 78s" method of amortization, interest is calculated over the expected life of the loan and added to the note's original balance. As each payment is received, it is applied to reduce the note balance without reference to principal or accrued interest. This makes accounting for the debt's repayment relatively easy as the creditor simply reduces a lump sum by each payment. If the note is paid back early, the loan needs to "rebate" or reduce interest earned based on its early retirement. This is done through a rebate calculation based on the remaining number of installments due, not the date of payment. A Rule of 78s method of amortization does not allow for the accrual of additional interest if installments are not paid, because the note pre-computes interest through maturity. So, if payments are not made, the amount of unearned rebate decreases, but no additional interest in excess of that originally calculated accrues, at least until maturity.

At the filing date, Note 1 was due for the October 2010 payment and Note 2 was paid

through November, 2010.[8] Note 1 matures on May 26, 2015 and Note 2 on May 15, 2013. Prepetition, 63 installments were made on Note 1. After the 63rd installment, $137,118.42 in principal and unearned interest of $53,814.48 was due. Although no additional installments were made, Note 1 contains pre-computed interest, so no additional interest is owed despite a failure to pay. Prepaying Note 1 by July 26, 2014 allows for the last ten months of unearned interest to be credited or $1790.56. Therefore the payoff amount on Note 1 is $189,142.34 in principal and interest.[9]

Note 2 received 27 prepetition installment payments. At the beginning of month 28, Note 2 had a principal balance of $16,401.90 and unearned interest of $5,022.36. However, this Note fully matured on May 15, 2013 so all unearned interest is now fully earned.[10] Postpetition, its principal balance is entitled to accrue interest at the note's rate of 23.83% for 14 months or $4,563.83. However, the Debtor has made adequate protection payments to ACI for this period which shall be used to reduce both interest and principal on Note 2.

As of January 15, 2014 accrued postpetition interest on Note 2, was $2,605.72.[11] The first payment reduced postpetition interest to -0- and principal by $1,392.28.[12] On February 26, 2014 an

---

[8] Exhs. 1A and 3.

[9] $137,118.42 + $53,814.48 - $1790.56 = $189,142.34.

[10] Total prepetition accrued or earned interest has been reduced by the residual payment of $40.78 unapplied prepetition resulting in total earned interest of $4,981.58 prepetition. *See*, note 7, *supra*.

[11] [($16,401.90 x 23.83%) / 12] x 8

[12] Since Note 1 had not yet reached its maturity date under the rule of 78s, it does not accrue additional interest postpetition unless the Court allows a conversion postpetition to simple interest. In an effort to conserve the estate and after taking into account the extraordinarily high rates of interest charged by CAI, the benefit to CAI of its amortization under the Rule of 78s and the full payout by Debtor as a result of this filing, the Court will not allow CAI to convert Note 1 to a simple interest note as of the petition date. Therefore, postpetition adequate protection payments shall be applied entirely to Note 2.

additional month of interest accrued, $298.07.[13]  The payment satisfied that sum and reduced principal by $3,699.93. On March 20, 2014 interest for another month accrued, $224.59.[14] Debtor's payment satisfied the interest and reduced principal by another $3,773.41. Then on April 24, 2014, interest of $149.66 accrued and was paid.[15] Again, principal was reduced by $3,848.34, this left a principal balance on Note 2 of $3,687.94. Interest from April 15, 2014 through July 15, 2014 is $219.71. The total payoff on Note 2 as of July 15, 2014 is $8,889.23 in principal and interest.[16]

CAI also claims late fees of $465.00 on Note 1 and $465.00 on Note 2. Presumably, these charges relate to the 31 missed installment payments at $15.00 per month on each loan. CAI also requests attorney's fees of $10,677.00 and reimbursement of insurance premiums of $13,409.79. Based on an outstanding combined balance of $198,031.57, this Court finds that CAI's request for attorney's fees is reasonable. It also finds that insurance premiums paid to protect its collateral and the late fees it assessed prepetition are collectible.

In conclusion, CAI's total payoff on both notes through July 2014 is $223,048.36.[17] A

---

[13] [(16,401.90-1,392.28) x 23.83%] / 12 = $298.07

[14] [(15,009.62-3,699.93) x 23.83%] /12 = $224.59

[15] (11,309.69 - 3,773.41) x 23.83%] /12 = $149.66

[16] $3,687.94 (principal) + $219.71 (postpetition interest) + $5022.36 (earned prepetition interest) - $40.78 = $8,889.23.

[17] $8889.23 + $189,142.34 + $465 + $465 + $13.409.79 + $10,677.00 = $223,048.36.

separate Order will be rendered in accord with these Reasons.

New Orleans, Louisiana, July 3, 2014.

                                        Hon. Elizabeth W. Magner
                                        U.S. Bankruptcy Judge